# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 11, 2007         Decided March 9, 2007

No. 05-1214

NORTH BAJA PIPELINE, LLC,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*Catherine E. Stetson* argued the cause for petitioner. With her on the briefs were *Lee A. Alexander*, *Stefan M. Krantz*, *James Howard*, *C. Todd Piczak*, and *Carl M. Fink*. *Debra H. Rednik* entered an appearance.

*Lona T. Perry*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *John S. Moot*, General Counsel, and *Robert H. Solomon*, Solicitor.

Before: HENDERSON, RANDOLPH and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: Interstate natural gas pipelines must submit their proposed shipping rates to the Federal Energy Regulatory Commission for approval. This case concerns a rate filing by North Baja, a pipeline that transports natural gas from Arizona to Mexico through California. North Baja proposed a formula for sharing with shippers the costs of so-called *force majeure* interruptions – interruptions due to uncontrollable and unexpected factors like severe weather. North Baja also proposed to include scheduled maintenance as a *force majeure* event. FERC determined that (i) North Baja's proposed cost-sharing formula was inconsistent with established FERC policy and (ii) scheduled maintenance was not a *force majeure* event under FERC precedents. We find FERC's decisions reasonable and reasonably explained, and we therefore deny North Baja's petition for review.

I

1. Natural gas shippers typically pay two fees to transport gas on a pipeline. The first fee, called a "reservation charge," is based on the amount of pipeline capacity reserved by the shipper. The second fee, called a "usage charge," is based on the actual amount of gas transported by the shipper. In accordance with FERC policy, pipelines recover their fixed costs (such as operating expenses) in the reservation charge and their variable costs (primarily the cost of fuel for pipeline compressors) in the usage charge. *See Pipeline Service Obligations and Revisions to Regulations Governing Self-Implementing Transportation; and Regulation of Natural Gas Pipelines After Partial Wellhead Decontrol*, Order No. 636, 57 Fed. Reg. 13,267-02, 13,281 (Apr. 8, 1992), *on reh'g*, Order No. 636-A, 57 Fed. Reg. 36,128-01, 36,171 (Aug. 3, 1992). When pipeline service is interrupted, shippers generally receive a "reservation charge credit," which (in substance) is a refund of

the reservation charge the shipper paid to reserve pipeline capacity.

2.  In October 2004, North Baja proposed a formula to share the costs of *force majeure* occurrences between the pipeline and its shippers.  Under North Baja's proposal, shippers would receive no refund for the first ten days of a *force majeure* interruption.  If the interruption persisted longer than ten days, the shippers would receive a percentage refund for each additional day the pipeline was out of service.

FERC rejected North Baja's proposed formula as inconsistent with Commission policy.  FERC explained that it had previously approved two refund formulas for *force majeure* events.  *See* Order Accepting and Suspending Tariff Sheets Subject to Conditions, 109 F.E.R.C. ¶ 61,159, at 61,766 ¶ 14 (Nov. 12, 2004).  Under the first, called the *Texas Eastern* policy, shippers receive no refund for the first ten days and receive a full refund for any days beyond that.  *Id.* (citing *Tx. E. Transmission Corp.*, 62 F.E.R.C. ¶ 61,015 (Jan. 13, 1993), and *Natural Gas Pipeline Co. of Am.*, 106 F.E.R.C. ¶ 61,310 (Mar. 29, 2004)).  Under the second, called the *Tennessee* policy, shippers receive a percentage refund for the entire period of the interruption.  *Id.* (citing *El Paso Natural Gas Co.*, 104 F.E.R.C. ¶ 61,045 (July 9, 2003)).  North Baja proposed a "hybrid" that combined the pipeline-favorable aspects of each of the two policies – the ten-day no-refund period of *Texas Eastern* and the percentage refund of *Tennessee*.  *Id.*  FERC concluded that this hybrid did not satisfy the Commission's standard of fair cost-sharing between pipelines and shippers.  *Id.* at 61,766 ¶ 15.

In the same order, FERC concluded that events within North Baja's control – such as scheduled maintenance – are not *force majeure* events.  *Id.* at 61,765 ¶ 11.  FERC directed North Baja

either to change its proposal to conform with the Commission's rulings or to offer additional support for it. *Id.* at 61,766 ¶ 15.

North Baja filed a request for clarification and rehearing before the Commission. North Baja argued that FERC had made two mistakes in the initial order. First, North Baja questioned whether the *Texas Eastern* and *Tennessee* formulas were the only permissible alternatives for a *force majeure* refund. Second, North Baja contended that FERC erred in determining that scheduled maintenance was not a *force majeure* event "without first considering North Baja's unique physical and operational characteristics." Joint Appendix 60.

FERC issued an Order on Rehearing, Clarification, and Compliance. 111 F.E.R.C. ¶ 61,101 (Apr. 19, 2005). The Commission stated plainly that the *Texas Eastern* and *Tennessee* policies were not the only permissible approaches to *force majeure* interruptions and that the Commission was "open to alternative approaches if fully justified and supported." *Id.* at 61,493 ¶ 20. North Baja's formula did not meet that requirement.

FERC also did not accept North Baja's argument on the scheduled maintenance issue. *Id.* at 61,492-61,493 ¶¶ 17-19. FERC explained that an interruption "from planned or scheduled maintenance is a non-*force majeure* event that requires the pipeline to provide full credits." *Id.* at 61,492 ¶ 17. Although some maintenance may be unavoidable, FERC did "not agree that the pipeline has no 'control' over how and when it performs such maintenance . . . . These are activities over which North Baja exercises a degree of control, unlike acts of God in typical *force majeure* situations." *Id.* at 61,492 ¶ 18. In addition, FERC explained, "since such maintenance is planned, the pipeline should have provided for such maintenance interruptions in its rates." *Id.* at 61,493 ¶ 18.

North Baja filed a timely petition for review of the orders in this Court. 15 U.S.C. § 717r(b).

II

We review the FERC decisions at issue here under the Administrative Procedure Act's arbitrary and capricious standard of review. *See* 5 U.S.C. § 706(2)(A). FERC's conclusions therefore must be reasonable and reasonably explained. *See Nat'l Fuel Gas Supply Corp. v. FERC*, 468 F.3d 831, 839 (D.C. Cir. 2006). We undertake that inquiry recognizing that we are "particularly deferential to the Commission's expertise in ratemaking cases, which involve complex industry analyses and difficult policy choices." *Exxon Mobil Corp. v. FERC*, 430 F.3d 1166, 1172 (D.C. Cir. 2005) (internal quotation omitted).

1. With respect to the cost-sharing formula, FERC reasonably rejected North Baja's proposal as inconsistent with agency policy. FERC has previously determined that two cost-sharing arrangements – *Texas Eastern*'s full credit after ten days and *Tennessee*'s percentage credit over the entire interruption period – are equitable. *See generally Natural Gas Pipeline Co. of Am.*, 106 F.E.R.C. ¶ 61,310, at 62,208 ¶ 5 (Mar. 29, 2004). Both alternatives incorporate a careful balancing of risk between shippers and pipelines. The problem here is that North Baja effectively cherry-picked the most pipeline-favorable aspects of each formula by combining *Texas Eastern*'s ten-day no-refund period with *Tennessee*'s percentage refund.

North Baja argues that its proposal should be measured against the general principle that pipelines and shippers must equitably share the risk of *force majeure* interruptions – and not measured against any previously approved policy. It is true that the Commission has evaluated proposals against the principle

that both pipelines and shippers should bear "some portion of the risk associated with *force majeure* interruptions, so that [pipelines] have an incentive to act expediently to cure a *force majeure* interruption." *Tenn. Gas Pipeline Co.*, *order on reh'g*, 80 F.E.R.C. ¶ 61,389, at 62,296 (Sept. 29, 1997). But there is nothing unreasonable about the Commission comparing North Baja's proposal to previously approved policies to determine if the proposal equitably shares the risk between North Baja and its shippers. The Commission has simply instructed North Baja to choose the *Texas Eastern* or *Tennessee* formulas, *or* to propose a formula that achieves an equitable cost-sharing in the same ballpark as the *Texas Eastern* and *Tennessee* policies.

North Baja also questions whether the Commission will in fact consider any approaches other than the specific *Texas Eastern* and *Tennessee* policies. In the order on rehearing below, however, the Commission made clear that it remained open to alternative mechanisms. *See* 111 F.E.R.C. ¶ 61,101, at 61,493 ¶ 20. FERC's decision did not turn, moreover, on the proposal's failure to exactly mirror either the *Texas Eastern* or the *Tennessee* policy, but rather on the fact that North Baja's "hybrid of the two policies" altered the responsibility for *force majeure* events in favor of the pipeline and against the shippers. 109 F.E.R.C. ¶ 61,159, at 61,766 ¶ 14. As the order on rehearing states, FERC remains open to other approaches that achieve a similar sharing of risk as the two previously approved policies. In short, FERC's decision on the cost-sharing issue was entirely reasonable.

2. With respect to the Commission's determination that scheduled maintenance is not a *force majeure* event, FERC applied its longstanding and consistent definition of what constitutes a *force majeure* interruption. More than ten years ago, the Commission analyzed this issue at length. *See Tenn. Gas Pipeline Co.*, Opinion No. 406, 76 F.E.R.C. ¶ 61,022 (July

3, 1996). In that opinion, the Commission ruled that a pipeline was required to issue full refunds for scheduled maintenance. *Id.* at 61,084-61,089. FERC explained that "[b]ecause a pipeline is responsible for operating its system so that it can meet its contractual obligations, if the pipeline must curtail firm service due to an event within its control, or management, the Commission finds it inequitable for the pipeline's customers to bear the risk associated with such mismanagement." *Id.* at 61,086. Furthermore, requiring a pipeline to pay for scheduled maintenance interruptions "provide[s] an incentive for the pipeline to manage its system so that it can avoid interruptions that it could have avoided if it had better managed its system." *Id.*

As a general matter, FERC has repeatedly reiterated that scheduled maintenance is not a *force majeure* event. *See Fl. Gas Transmission Co.*, 107 F.E.R.C. ¶ 61,074, at 61,245 ¶¶ 28-29 (Apr. 20, 2004); *Alliance Pipeline L.P.*, 84 F.E.R.C. ¶ 61,239, at 62,214 (Sept. 17, 1998). In *El Paso Natural Gas Co.*, moreover, the Commission decided that the rule applies even to pipelines with little excess capacity. *See* 105 F.E.R.C. ¶ 61,262, at 62,350 ¶ 7, 62,352 ¶ 15 (Nov. 28, 2003). FERC explained that "[t]he Commission's policy on this issue as set forth in the *Florida Gas* decision is not dependent upon specific operating conditions on the pipeline." *Id.* at 62,352 ¶ 15.

In its orders here, FERC expressly relied on these precedents and applied its well-established and reasonable definition of a *force majeure* event to the case before it. 111 F.E.R.C. ¶ 61,101, at 61,492 ¶ 17 & nn.12-13; *see also Bellevue Hosp. Ctr. v. Leavitt*, 443 F.3d 163, 176 (2d Cir. 2006).

North Baja argues that Opinion 406 emphasized "control" and contends that a pipeline, when it operates at full capacity, cannot avoid interrupting service at some point to perform

necessary maintenance. In North Baja's view, "[o]n a single-line system with virtually no excess capacity, such as North Baja, the pipeline has no control over the occurrence of service interruptions, regardless of when the maintenance activities take place. Certain mainline maintenance cannot be performed on a single-line system, like North Baja's, without either taking the entire pipeline out of service or reducing its throughput . . . ." Petitioner's Br. at 22-23. Therefore, at least for a pipeline that has little or no excess capacity, North Baja contends that FERC policy dictates that scheduled maintenance must be considered a *force majeure* event. Moreover, North Baja argues that FERC was obligated to consider the specific factual circumstances of North Baja – in particular, that it was operating at full capacity and that scheduled maintenance outages were therefore uncontrollable. *Cf. Williston Basin Interstate Pipeline Co. v. FERC*, 358 F.3d 45, 48-49 (D.C. Cir. 2004); *Mich. Wis. Pipe Line Co. v. FPC*, 520 F.2d 84, 89 (D.C. Cir. 1975).

In Opinion 406, however, the Commission defined *force majeure* events as events that are not only uncontrollable, but also unexpected. As the Commission wrote, "neither Tennessee, nor its shippers are at fault for *force majeure* interruptions, because these are unexpected and uncontrollable events." 76 F.E.R.C. ¶ 61,022, at 61,088. Although some scheduled maintenance interruptions may be uncontrollable, they certainly are not unexpected. There is nothing unreasonable about FERC's policy that pipelines' rates should incorporate costs associated with a pipeline "operating its system so that it can meet its contractual obligations," and that a cost-sharing mechanism should be reserved for uncontrollable and unexpected events that temporarily stall service. The Commission here reasonably determined that North Baja's circumstances did not exempt it from the Commission's longstanding policy regarding scheduled maintenance.

## III

Although North Baja has capably advanced its arguments to this Court, we find FERC's decisions reasonable and reasonably explained for purposes of our deferential review under the Administrative Procedure Act. We therefore deny North Baja's petition.

*So ordered*.